133 F.3d 928
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Luis Alfonso RIVERA-RIVERA, a/k/a Arnulfo Rivera, Petitioner,
v.
IMMIGRATION AND NAUTRALIZATION SERVICE, Respondent.
 No. 96-70662.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 15, 1997.**
Decided Dec. 17, 1997.
 
 Before SNEED, LEAVY, and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Luis Alfonso Rivera-Rivera, a native and citizen of El Salvador, petitions for review of the Board of Immigration Appeals' ("BIA") decision affirming the order of an immigration judge ("IJ") denying his applications for asylum, withholding of deportation, suspension of deportation, and voluntary departure. We have jurisdiction pursuant to 8 U.S.C. § 1105a(a), and we deny the petition.[1]
 
 A. Asylum
 
 3
 Rivera-Rivera contends that the BIA's conclusion that he failed to establish past persecution or a well-founded fear of future persecution on account of a political opinion is not supported by substantial evidence. We disagree.
 
 
 4
 We review the BIA's factual findings for substantial evidence, and will uphold the decision unless the evidence compels a contrary result. See Acewicz v. INS, 984 F.2d 1056, 1061 (9th Cir.1993).
 
 
 5
 Rivera-Rivera testified that, in 1979, twenty-five to thirty guerrilla members came to his family's house, tied up Rivera-Rivera and his godfather, and robbed the family of their household possessions. When the guerrillas returned three days later, Rivera-Rivera and his godfather fled. Four or five months after the second incident, Rivera-Rivera left for Mexico. He testified that "[he] didn't want to be part of the guerrillas [and he] didn't want to be part of the government." Rivera-Rivera indicated that his godfather was killed by the guerrillas while riding in a bus and that his half-brother was told to either "run or be killed." After six years in Mexico, Rivera-Rivera entered the United States.
 
 
 6
 The BIA's finding that Rivera-Rivera failed to establish persecution "on account of" one of the enumerated grounds is supported by substantial evidence. First, Rivera-Rivera failed to demonstrate any direct or circumstantial evidence that the El Salvadoran guerrillas were motivated by his political opinion, as opposed to financial gain. See Sangha, 103 F.3d 1482, 1490-91 (9th Cir.1997) (stating that persecution must be "on account of" the applicant's political opinion). Second, Rivera-Rivera failed to demonstrate a connection between himself and the murder of his godfather. See Prasad v. INS, 47 F.3d 336, 340 (9th Cir.1995) (stating that although acts of violence against family members may establish persecution claim, the violence must have created a pattern of violence closely tied to the applicant). The record does not compel us to find otherwise. See Elias-Zacarias, 502 U.S. 478, 481 n. 1 (1992).[2]
 
 B. Suspension of Deportation
 
 7
 Rivera-Rivera contends that the BIA abused its discretion by denying his request for suspension of deportation. We disagree.
 
 
 8
 We review the BIA's denial of suspension of deportation under an abuse of discretion standard. See Hernandez-Robledo v. INS, 777 F.2d 536, 541-42 (9th Cir.1985). Additionally, we review the BIA's finding of no extreme hardship for abuse of discretion. See Tukhowinich v. INS, 64 F.3d 460, 463 (9th Cir.1995). We may not substitute our sense of what constitutes extreme hardship unless the BIA abuses its discretion, either by failing to consider all of the relevant factors or to articulate reasons supported by the record for denying suspension of deportation. See Astrero v. INS, 104 F.3d 264, 267 (9th Cir.1996).
 
 
 9
 Rivera-Rivera testified that, since he arrived in the United States in 1986, he has worked for a landscaping company and paid taxes by using a fictitious social security number. He testified that he knowingly included a fictitious dependent on his tax documents in order to receive a larger refund. Rivera-Rivera also admitted that was arrested four times for driving while intoxicated, that he spent twenty-six days in detention for the last drunk driving offense, and that he spent ten days in detention for violating an order to appear in court. He testified, however, that he now attends Alcoholics Anonymous meetings. Rivera-Rivera further testified that he has no family ties in the United States, has not participated in community activities, owns no property, and speaks "very little" English. He testified that his main reasons for wanting to remain in the United States is that it "feel[s] good here" and in order to "make more money."
 
 
 10
 Here, the BIA considered the above-mentioned factors and reasonably determined that Rivera-Rivera lacked good moral character and failed to demonstrate extreme hardship. Inasmuch as the record demonstrates that the BIA considered all of the relevant factors and articulated reasons, supported by the record, for denying suspension of deportation, the BIA did not abuse its discretion. See Astrero, 104 F.3d at 267; see also Tukhowinich, 64 F.3d at 463.[3]
 
 
 11
 PETITION FOR REVIEW DENIED.
 
 
 
 **
 The panel unanimously finds this case suitable for decision without oral argument. See Fed. R.App. P. 34(a); 9th Cir. R. 34-4
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 8 U.S.C. § 1105a was repealed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104-208, 110 Stat. 3009 (Sept. 30, 1996), as amended by Act of Oct. 11, 1996, Pub.L. No. 104-302, 110 Stat. 3656. However, because petitioner was in deportation proceedings before April 1, 1997, section 309(c) of IIRIRA provides that this court continues to have jurisdiction under 8 U.S.C. § 1105a
 
 
 [2]
 Because Rivera-Rivera failed to demonstrate eligibility for asylum, he necessarily failed to demonstrate eligibility for withholding of deportation. See Ghaly v. INS, 58 F.3d 1425, 1429 (9th Cir.1995)
 
 
 [3]
 Additionally, we agree with the BIA's conclusion that Rivera-Rivera's failure to demonstrate good moral character rendered him statutorily ineligible for voluntary departure. See Villanueva-Franco v. INS, 802 F.2d 327, 329 (9th Cir.1986); see also 8 U.S.C. § 1101(f)